UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHAU B. TRAN,

    Plaintiff,

v.                                                               Case No: 6:16-cv-949-Orl-40TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## REPORT AND RECOMMENDATION

Plaintiff Chau B. Tran brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits under the Act. Upon a review of the record, I respectfully recommend that the Commissioner's final decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

Plaintiff filed for benefits on May 18, 2012, alleging disability commencing on January 1, 2006, due to "coronary heart problems, hepatitis B, going blind in right eye, back problems, leg problems, brain aneurysm, depression, mental issues, high blood pressure, high cholesterol and arthritis" (Tr. 176-77, 237). Her applications were denied initially and on reconsideration, and she requested and received a hearing before an

---

[1] These facts are taken from the Joint Memorandum filed by the parties (Doc. 20).

administrative law judge ("ALJ") (Tr.71-99, 102-08, 34-70). At hearing, she amended her onset date to June 3, 2009 (Tr. 44).

Plaintiff was age 51 at her alleged disability onset and 53 as of December 31, 2010, the date when she was last insured for disability insurance benefits (Tr. 176). She reported in forms submitted to the Commissioner that she had an eleventh grade education but testified at the hearing that she completed seventh grade in Vietnam and has had no American schooling (Tr. 41, 238). Plaintiff previously worked as a telephone solicitor (sedentary, semi-skilled work) and food service supervisor (light, skilled work) (Tr. 42-44, 69).

On September 10, 2014, the ALJ issued an unfavorable decision, finding Plaintiff not disabled during the period between her alleged onset date and the date she was last insured for disability insurance benefits (Tr. 14-33). On March 29, 2016, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 1-4). Consequently, the ALJ's decision is the Commissioner's final decision. Plaintiff brings this action after exhausting her available administrative remedies, and the dispute is fully briefed and ripe for resolution.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.

See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged amended onset date (Tr. 19). At step two, the ALJ determined that Plaintiff had the severe impairments of: vision loss due to a history of an aneurysm; hearing loss; coronary artery disease; and arthropathies[2] (20 C.F.R 404.1520(c)) (Id.). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 20). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) with additional limitations (Tr. 20-21). The ALJ determined that Plaintiff:

> could lift or carry 20 pounds occasionally (up to one-third of the workday) and 10 pounds frequently (up to two-thirds of the workday), stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant could not work in a loud environment. In addition, the claimant could perform only occasional near acuity, far acuity, and field of vision with her right eye.

(Tr. 21). At step four, the ALJ determined that this RFC permitted return to Plaintiff's past relevant work as a telephone solicitor and Plaintiff was thus not disabled during the relevant period (Tr. 28-29).

---

[2] An arthropathy is any joint disease. http://medical-dictionary.thefreedictionary.com/arthropathy last visited March 31, 2017.

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the ALJ's formulation of her RFC assessment is not supported by substantial evidence and was not determined in accordance with proper legal standards in that: 1) the ALJ erred in determining that Plaintiff can perform light work with vision limited to "occasional" near/far acuity and field of vision, when no medical

expert opined that she has the visual limitations determined by the ALJ; 2) the ALJ failed to indicate the weight assigned to the opinions of Plaintiff's treating and examining physicians; 3) the ALJ improperly relied on the testimony of a vocational expert after posing and relying on a hypothetical that did not accurately reflect Plaintiff's limitations; and 4) the ALJ improperly evaluated Plaintiff's subjective complaints.

*Visual limitations*

Plaintiff argues that the ALJ did not adequately consider her vision limitations in determining that she could perform only occasional near acuity, far acuity, and field of vision with her right eye (Tr. 21). Plaintiff contends that there is no record support for this limitation, especially as vision "is an activity that occurs all throughout the day" and not just "occasionally." Plaintiff argues that the ALJ "cannot come to her own conclusions regarding the limitations of the claimant, and cannot substitute her judgment for that of the medical and vocational experts," citing Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). (Doc. 20 at 10-11). The Commissioner disagrees, noting that the ALJ is qualified to evaluate the medical evidence and reach a conclusion and need not rely on a medical source statement to decide a claimant's claim properly. See, e.g., Castle v. Colvin, 557 F. App' x 849, 853-54 (11th Cir. 2014). The Commissioner contends that the record is more than sufficient to support the vision limitation here and that any error is harmless. Upon review, I agree with the Commissioner.

The ALJ, and not a medical source, determines the claimant's RFC. Robinson v. Astrue, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] ... is within the province of the ALJ, not of doctors."). Moreover, "a medical source statement is not essential to an RFC determination. The ALJ is under no obligation to obtain or adopt a medical source statement's findings as her RFC finding." Smith v.

- 5 -

Comm'r, Soc. Sec. Admin., No. 2:15-CV-00964-HGD, 2017 WL 167322, at *6 (N.D. Ala. Jan. 17, 2017). The ALJ carefully reviewed the evidence here regarding Plaintiff's claimed vision impairment, noting:

> the claimant's vision loss of the right eye due to an aneurysm was not of the severity described in section 2.00 et seq. The claimant has had decreased right eye vision, but the remaining vision in her (better) left eye, after best correction, was 20/25, (as of February 2, 2012) which is better than 20/200 or less (Exhibit 7F/2). On June 4, 2009, Dr. J. Mattheis, an ophthalmologist, had also found the claimant with visual acuity of as high as 20/20 in her right eye and 20/20 in her left eye (Exhibit 8F/80).

(Tr. 20). The ALJ noted that Plaintiff denied having blurred vision in February and September 2010 doctor visits (Tr. 27) and that Plaintiff testified she was able to get a driver's license on October 7, 2009, with no limitations for her sight (Tr. 28). While Plaintiff correctly observes that vision occurs throughout the day and not just occasionally,[3] any error is harmless as Plaintiff points to no evidence that any limitation in her vision prevented her from returning to work as a telephone solicitor during the relevant period.

*Treating Physicians*

Plaintiff maintains that the ALJ erred in failing to state the weight assigned to the opinions of her treating physicians, Dr. Gene R. Arangorin and Dr. Michael Bibliowicz. The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her

---

[3] Plaintiff's reliance on Gainey v. Comm'r of Soc. Sec., Case No: 6:12-cv-1579-Orl-DAB (M.D. Fla. Feb. 7, 2014) is misplaced. The claimant in Gainey was demonstrably more visually limited than Plaintiff claims to be and the decision turned on the ALJ's "failure to recognize" that Gainey "was blind in her right eye and had decreased corrected vision in her left eye." Id. at 9. There is no allegation here that the ALJ did not accurately characterize the evidence regarding Plaintiff's visual impairment and Plaintiff points to no evidence the ALJ overlooked.

impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c)(2); Crawford, 363 F.3d at 1161. Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

### Dr. Arangorin

Plaintiff was seen by Dr. Arangorin, her primary care physician, on September 8, 2010 for a follow-up on her bilateral knee pain and joint stiffness (Tr. 356). She reported to Dr. Arangorin that she was "doing fairly well," with occasional chest pressure that

resolved spontaneously and moderate flare-ups of knee pain with stiffness associated with stair climbing (Id.). On musculoskeletal examination, Plaintiff had normal range of motion, strength and tone (Tr. 358). The doctor prescribed Ibuprofen and Celebrex for the knee pain, and told Plaintiff to avoid kneeling and squatting, and use heat therapy, compression wrap, and passive range of motion (Tr. 358-59).

Plaintiff was again seen by Dr. Arangorin on January 31, 2011, after injuring herself in a fall which occurred January 29, 2011 – after her date last insured (Tr. 352). During the physical examination, Dr. Arangorin noted that Plaintiff had normal gait and station but decreased range of motion in back flexion and extension; pain with range of motion testing in back flexion and extension; left knee internal rotation and external rotation; and paralumbar muscle spasms (Tr. 354). Dr. Arangorin prescribed medications and recommended that Plaintiff use heat therapy, compression wrap, and passive range of motion and avoid kneeling and squatting (Tr. 355).

The ALJ discussed Dr. Arangorin's treatment notes throughout her opinion, but did not explicitly weigh the doctor's instructions to avoid kneeling and squatting. Plaintiff claims this is reversible error. I do not agree. The ALJ did not ignore Dr. Arangorin's notes, but discussed them at length, including the notes regarding knee pain:

> On February 9, 2010 and September 8, 2010, Dr. Arangorin found the claimant with intact coordination, an intact gait, intact reflexes, intact motor and sensory functions, and normal musculoskeletal strength, tone, and ranges of motion (Exhibit 8F/l 7, 20-21). Dr. Arangorin also noted the claimant's report that she had *only moderate* episodic flare-ups of bilateral knee pain with stiffness, occurring *(only) primarily when climbing stairs* (Exhibit 8F/15).

(Tr. 26-emphasis added).

The ALJ also correctly observed that "the evidence fails to show significant

- 8 -

treatment, such as hospitalization, surgery, or emergency care, for the claimant's musculoskeletal system through the date last insured" (Tr. 27). These findings are supported by substantial evidence and are consistent with Plaintiff's RFC assessment. Thus, while the ALJ did not make an explicit finding regarding the weight to be given to the sole notation made within the relevant time period,[4] that Plaintiff should avoid kneeling or squatting it is plain that the entirety of Dr. Arangorin's opinions were considered in formulating Plaintiff's RFC. Additionally, Plaintiff has failed to show that a limitation to avoid kneeling and squatting is inconsistent with an RFC which allows for her to perform her past relevant work as a telephone solicitor. Under these circumstances, Plaintiff's objections do not warrant reversal. See Shaw v. Astrue, 392 F. App'x 684, 687 (11th Cir. 2010) (even if the ALJ erred in failing to mention every finding made by a doctor, such error was harmless where RFC finding was not inconsistent with doctor's findings); Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (*per curiam*) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citation omitted); Adams v. Comm'r, Soc. Sec. Admin., 586 F. App'x 531, 534 (11th Cir. 2014) (*per curiam*) ("[T]he ALJ did not err by failing to specifically address Adams's neurologist's opinion that she should avoid frequent overhead reaching, and that she needed to take 5-minute breaks every 45 minutes, as his written decision made clear that he considered both the neurologist's opinion and Adams's medical condition as a whole.") (citation omitted).

---

[4] The limitations arising from the January 2011 visit were noted to be a result of a fall which occurred after Plaintiff's date last insured. Earlier records from this provider show normal strength, tone and range of motion.

Dr. Bibliowicz

On April 19, 2010, Plaintiff was seen by Dr. Michael Bibliowicz for an evaluation of decreased hearing, with the right side being a little worse than the left (Tr. 291, 401). Dr. Bibliowicz noted that audiologic testing revealed moderate neurosensory loss bilaterally and possible bilateral conductive loss due to a Eustachian tube dysfunction that was difficult to measure because Plaintiff had a right ear infection with effusion (Tr. 291, 401, 403). Dr. Bibliowicz planned to recheck Plaintiff in a month, after her infection cleared, because she would require hearing aid amplification (Tr. 292, 402). Plaintiff complains that it is "not clear how this evidence was factored into the residual functional capacity determination, since the ALJ did not note the weight assigned" to Dr. Bibliowicz's opinion. (Doc. 20 at 12). Again, I see no error.

The ALJ did not ignore Dr. Bibliowicz's findings; rather, the ALJ discussed this visit in detail (Tr. 20, 23-24, 28). Although Plaintiff contends that it is not clear how this evidence was factored into the RFC, the ALJ set forth an explicit rationale:

> With respect to nonexertional communication limitations, (as previously discussed) Dr.Bibliowicz, on April 19, 2010, noted that the claimant had otitis media with effusion in her right ear, as well as an eustachian tube dysfunction in both ears (Exhibit 8F/60, 62). Dr. Bibliowicz also noted that the claimant would require hearing aid amplification once her effusion cleared (Exhibit 8F/61).
>
> Nevertheless, on April 19, 2010, Dr. Bibliowicz noted that the claimant had only moderate neurosensory loss in both ears as revealed by an audiologic evaluation (Exhibit 8F/60, 62).
>
> The evidence fails to show that a hearing aid was ever prescribed for the claimant.
>
> At the hearing, the claimant testified that she was able to get a driver's license on October 7, 2009, with no limitations for her hearing.

- 10 -

> In addition, at the hearing, the claimant testified that her hearing aids did not help her at all, and she was observed to be able to hear without them when she took them off.
>
> Thus, the undersigned further finds that, through the date last insured, the claimant had the physical residual functional capacity to be unable to work in a loud environment.

(Tr. 28). Plaintiff fails to establish any error requiring remand for further consideration of this opinion.

*Hypothetical Questions*

Plaintiff next contends that the ALJ improperly relied on the testimony of a vocational expert after posing and relying on a hypothetical that did not accurately reflect her limitations, as found by Dr. Bibliowicz and Dr. Arangorin. This contention misses the mark.

This case was decided at step four – not step five – of the sequential evaluation process, and the ALJ elicited expert testimony to determine whether Plaintiff could perform her past relevant work (Tr. 68-69). This is not objectionable as the ALJ may rely on a vocational expert's testimony regarding the physical and mental demands of the claimant's past work. Simpson v. Comm'r of Soc. Sec., 423 F. App'x 882, 884 (11th Cir. 2011). To the extent the ALJ relied on a hypothetical posed to the vocational expert, in order for such testimony to constitute substantial evidence, the hypothetical question must comprise all of the claimant's impairments. Winschel, 631 F.3d at 1180. However, the ALJ is not required to include limitations in the hypothetical that the ALJ has found to be unsupported. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir.2004). Here, Plaintiff does not identify any limitation the ALJ found to be supported that was not included in the hypothetical posed to the vocational expert. To the extent Plaintiff's contention relies on a finding that the opinions of her physicians were not adequately

- 11 -

evaluated, it does not persuade, for the reasons set forth above. Reversal is not required on this ground.

*Credibility*

Plaintiff's final contention is that the ALJ failed to adequately evaluate her complaints of pain and limitation. A claimant may seek to establish that she has a disability through her own testimony regarding pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Dep't of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

After a detailed evaluation of the medical evidence, the ALJ found "that the claimant's medically determinable severe impairments . . . could reasonably be expected to cause her alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limited effects of these symptoms are not fully credible during the relevant period, to the extent they are inconsistent with the evidence above and the residual functional capacity assessment below" (Tr. 25). Plaintiff asserts that this is insufficient boilerplate language and the ALJ failed to make accurate and specific findings

as to credibility of the Plaintiff, thereby amounting to a failure in developing a full and fair record. These contentions are without merit.

The ALJ explained throughout the decision why she found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms during the relevant period were inconsistent with substantial medical evidence, including objective findings, effective treatment, and lack of treatment, and reports of Plaintiff's activities (Tr. 21-28). These considerations are relevant for evaluating subjective symptoms under the regulations. See 20 C.F.R. §§ 404.1529(c)(3), (4); SSR 96-7p; SSR 16-3p; Jamison v. Bowen, 814 F.2d 585, 588-89 (11th Cir. 1987) (finding an ALJ not required to use particular formulations or phrases as long as a court can determine that the ALJ considered the claimant's entire medical condition under proper regulatory and statutory requirements).

For example, the ALJ acknowledged Plaintiff's history of arthropathies but noted that despite Plaintiff's condition:

> Moreover, on February 9, 2010 and September 8, 2010, Dr. Arangorin found the claimant with intact coordination, an intact gait, intact reflexes, intact motor and sensory functions, and normal musculoskeletal strength, tone, and ranges of motion (Exhibit 8F/17, 20-21). Dr. Arangorin also noted the claimant's report that she had only moderate episodic flare-ups of bilateral knee pain with stiffness, occurring (only) primarily when climbing stairs (Exhibit 8F/15). In addition, the evidence fails to show significant treatment, such as hospitalization, surgery, or emergency care, for the claimant's musculoskeletal system through the date last insured.

(Tr. 21-22).

At the administrative hearing, Plaintiff testified that she was impaired by a heart condition which affected her ability to breathe, and which required stent-placement surgery (Tr. 22). However, the ALJ observed that:

> On March 9, 2010, however, an echocardiogram revealed a normal left ventricular ejection fraction (EF) of as high as 60 percent, along with only mild valvular insufficiencies (Exhibit 8F/63,65). On March 9, 2010, a nuclear stress test also revealed a left ventricular EF of as high as 69 percent, as well as no exercise-induced ischemia (Exhibit 8F/63, 66).
>
> Moreover, on March 23, 2010, Dr. C. Duggal, a cardiologist, found the claimant with lungs clear to auscultation and percussion bilaterally, an only slightly elevated blood pressure of 130/80, a regular heart rate and rhythm, normal heart sounds, no murmurs, gallops, or rubs, and no peripheral edema (Exhibit 8F/63). Dr. Duggal also noted that the claimant's left-sided chest discomfort occurred only when awakening, lasted for only 5 minutes at a time, and self-dissipated after ambulation (Exhibit 8F/63). Dr. Duggal further noted that the claimant denied having shortness of breath, palpitations, or radiation symptoms (Exhibit 8F/63).

(Tr. 22).

The ALJ acknowledged that Plaintiff had testified she was impaired by an aneurysm which did not burst, but which was surgically coiled and which encroached on her right optic nerve (Tr. 23). According to Plaintiff this resulted in her being barely able to see out of her right eye, she had blank spots in her right field of vision, and she had head pain and nausea approximately eight times a week (Tr. 23). However, the ALJ noted that:

> On June 4, 2009, however, Dr. Mattheis found the claimant with visual acuity of as high as 20/20 in her right eye and 20/20 in her left eye (Exhibit 8F/80). On June 8, 2009, Dr. Burry also found the claimant to be alert, oriented, and with intact higher cortical functions, as well as intact extraocular movements (Exhibit 8F/75). Dr. Burry also noted that the claimant had an only mild chronic headache condition (Exhibit 8F/75). On August 17, 2009, Dr. Burry further noted that the claimant's vision was stable several weeks after coiling her ophthalmic artery aneurysm (Exhibit 2F/2).
>
> Moreover, on February 9, 2010 and September 8, 2010, Dr. Arangorin found the claimant to be in no acute distress and with intact cranial nerves (Exhibit 8F/l7, 20-21). Dr. Arangorin

> also noted that the claimant denied having blurred vision, eye pain, headaches, nausea, or vomiting (Exhibit 8F/l5, 19).

(Id.).

Plaintiff testified that she was impaired in that she was unable to sleep well, noting that she awakened ten to fifteen times per night due to choking and an inability to breathe. But, the ALJ observed that:

> On February 9, 2010 and September 8, 2010, however, Dr. Arangorin noted that the claimant denied having fatigue or a sleep disturbance (Exhibit 8F/15, 19). On December 16, 2010, Dr. Dumois also noted that the claimant denied having lightheadedness, dizziness, or fatigue (Exhibit 8F/49). In addition, the evidence fails to show any diagnosis of a sleep disorder, nor any significant treatment, such as hospitalization, surgery, or emergency care, for the claimant's reported sleep disturbance through the date last insured.

(Tr. 24).

These are examples of the ALJ's detailed summary of Plaintiff's complaints and the medical evidence. The ALJ set forth numerous objective findings that are inconsistent with disabling limitations and concluded that "the evidence as a whole does not substantiate any cause for such debilitating limitations as described by the claimant that would have precluded all work activity, including substantial gainful activity, through the date last insured." (Tr. 25).

The question is not ... whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r, of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011). Here, the ALJ provided a detailed analysis of the evidence of record, supplied a rationale for her findings, and these conclusions are supported by the evidence she cites. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates

against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. (internal quotation and citation omitted).

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Commissioner's final decision in this case be **AFFIRMED**

2. The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on March 31, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record